**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| HERMAN CRISP, | § | |
| Plaintiff, | § | |
| V. | § | |
| | § | |
| DERRICK A. DUTTON, CRAIG S. | § | A-15-CV-0431-LY-ML |
| GRIPENTROG, AND JOHN DOE | § | |
| OFFICERS 1-8, | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION ON THE MERITS
OF DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE
TO CONDUCT LIMITED EXPEDITED DISCOVERY**

Before the Court are the Motion to Dismiss for Failure to State a Claim [Dkt. #28], filed on September 18, 2015 by Defendants, Sergeant Derrick A. Dutton and Deputy Craig S. Gripentrog; Plaintiff's Response to Defendants' Motion to Dismiss [Dkt. #31], filed on October 2, 2015 by Plaintiff, Herman Crisp; Plaintiff's Motion for Leave to Conduct Expedited Discovery [Dkt. #29], filed on September 21, 2015; Defendants Dutton and Gripentrog's Response to Plaintiff's Motion for Expedited Discovery [Dkt. #30], filed October 2, 2015; and Plaintiff's Reply to Defendants Dutton and Gripentrog's Response to Plaintiff's Motion for Expedited Discovery [Dkt. #36], filed October 7, 2015.  These motions and related briefing have been referred to the undersigned by United States District Judge, Lee Yeakel, for resolution and/or report and recommendation on the merits, pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rules 1(c) and 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.  After reviewing the pending motions, the relevant case law, as well as the entire case file, the undersigned issues the following Order and Report and Recommendation.

1

## I.      Background

Plaintiff Herman Crisp is an 81-year old resident of Williamson County, Texas.  2d. Am. Compl. [Dkt. #19] at 5.  According to his Second Amended Complaint, at approximately 3:45 P.M. on September 26, 2014, Crisp was drinking coffee with a neighbor on his front porch when a SWAT team arrived.  *Id.*  Without any verbal warning, a member of the SWAT team detonated a flash-bang device in Crisp's front yard.  The SWAT team advanced onto the property and ordered Crisp to get on the ground.  *Id.*  While Crisp was moving to comply, "he was grabbed by some of those Officers and slammed to the ground, breaking his hip."  *Id.*  The officers handcuffed Crisp's hands behind his back while he was on the ground.  *Id.*

Some of the SWAT team began to execute a search warrant for Prentice Hill, Crisp's nephew.  *Id.*  During the search, the officers broke windows and destroyed other property inside Crisp's home.  *Id.*  While the search was ongoing, two of the officers ordered Crisp to stand up, which he was unable to do because of his injury.  *Id.*  Crisp's hip injury caused his leg to rotate almost 180 degrees.  *Id.*  The officers "observed that he was unable to move due to his injuries" and removed his handcuffs.  *Id.*

On completing the search, the officers took Crisp back inside the house.  *Id.*  Although Crisp told the officers he was injured, the officers "did not call for the paramedics, suggest or provide an ambulance or any other sort of medical assistance."  *Id.*  They simply left, and Crisp was found the next day by a neighbor and a relative, "lying on the floor in his own fecal matter, unable to reach the bathroom due to his hip injuries."  *Id.* at 6.  His friends took him to a hospital, where he was treated for a broken hip.  *Id.*

Crisp now sues the individual officers on the SWAT team that executed the search warrant at his home on September 26, 2014, asserting claims pursuant to 42 U.S.C. § 1983 for

violation of his rights under the Fourth and Fourteenth Amendments.  *Id.*  Crisp seeks damages against the individual officers "most probably in excess of a million dollars" for his medical care and treatment, past and future, as well as mental anguish, physical impairment, and exemplary damages.  *Id.* at 9-10.  Crisp also seeks attorneys' fees pursuant to 42 U.S.C. § 1988(b). *Id.*

Specifically, Crisp alleges the SWAT team officers used excessive force by detonating the flash bang device, taking him to the ground with enough force to break his hip, and handcuffing him behind his back after he was already severely injured.  *Id.* at 6-7.  Crisp further alleges the officers showed deliberate indifference to the injuries they caused him, and were deliberately indifferent to the substantial risk of further injury caused by their failure to provide him with medical care.  *Id.* at 7.

Crisp is not able to identify, without further discovery, the names of most of the individual members of the SWAT team or specify which of the individual SWAT team officers injured him.  *Id.* at 2-3.  He does, however, allege that all of the SWAT team officers are subject to bystander liability for these violations, because the use of the flash-bang device and Crisp's "take-down" occurred in the front yard in plain view of all members of the SWAT team.  *Id.* at 7. Crisp alleges his injury and immobility were also in plain view of all the members of the SWAT team.  *Id.*  His leg was rotated almost 180 degrees and he was unable to stand, so that individual members of the SWAT team had to "lift[] him off the ground and [sit] him on the front porch," *id.* at 5, and officers had to physically move him back inside the house at the end of the search. *Id.*

Individual named Defendants, Sergeant Derrick A. Dutton and Deputy Craig S. Gripentrog, have moved to dismiss Crisp's claims against them for failure to state a claim in light of their assertions of qualified immunity.  Mot. Dism. [Dkt. #28] at 1.  Dutton and

Gripentrog contend they are entitled to dismissal because, among other things, "[t]he Plaintiff has failed to allege facts against any specific public servant and that renders his complaint facially inadequate." *Id.* at 5. Deputy Griptentrog additionally moves for dismissal on the grounds that he had no personal involvement in the events. *Id.* at 7. Deputy Gripentrog attempts to introduce, as a public record for judicial notice, an unauthenticated time card suggesting he was not on duty on the day in question. *Id.* at Ex. 1.

In response, Crisp has moved for leave to serve the SWAT team's employer, non-party Williamson County, with discovery requests aimed at identifying the individual officers and their roles in the execution of the search warrant at Crisp's home on September 26, 2014. Mot. Exp. Disc. [Dkt. #29] at 1-2. Dutton and Gripentrop contend that no discovery is warranted until their Motion to Dismiss on grounds of qualified immunity is resolved. Resp. Mot. Exp. Disc. [Dkt. #30] at 1.

The Court held a hearing on Tuesday, October 27, 2015 on the pending Motion to Dismiss and Motion for Expedited Discovery. The parties appeared through counsel. After considering the briefing, the arguments of counsel at the hearing, the applicable law, and the case file as a whole, the Magistrate Court RECOMMENDS that the District Court find Plaintiff has stated a claim for relief that fairly addresses and pleads facts sufficient to overcome the defense of qualified immunity, but that the issue of qualified immunity turns "at least partially on an issue of fact" for which limited discovery is necessary. *Webb v. Livingston*, No. 14-40579, 14-40586, 14-40756, 2015 U.S. App. LEXIS 12445, *9-11 (5th Cir. July 17, 2015) (citing *Backe v. LeBlanc*, 691 F.3d 645, 647 (5th Cir. 2012); *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987). Given the need to resolve material fact issues relevant to qualified immunity, the Magistrate Court further RECOMMENDS the District Court "defer[] its ruling on [Defendants']

4

motions to dismiss and order[] discovery narrowly tailored to the issue of qualified immunity." *Id.*  Because the Plaintiffs' Motion for Expedited Discovery specifies written discovery that is narrowly tailored to identify the officers involved in the search and seizure at issue, the Magistrate Court recommends the District Court GRANT the Motion for Expedited Discovery [Dkt. #29], allowing Plaintiff to subpoena this limited written discovery from non-party, Williamson County.

In so recommending, the Magistrate Court acknowledges Defendants believe this procedure—deferral of their motion to dismiss pending limited discovery relevant to the question of qualified immunity—is contrary to established law.  As explained in detail below, however, the Fifth Circuit has recommended this course of action to address qualified immunity defenses that depend on further development of the factual record in multiple decisions from 1987 through 2015.  *See generally Webb*, 2015 U.S. App. LEXIS 12445; *Backe*, 691 F.3d 645, *Lion Boulos*, 834 F.2d 504.  Therefore, the Magistrate Court RECOMMENDS the District Court DEFER ruling on the Motion to Dismiss for Failure to State a Claim [Dkt. #28], filed  on September 18, 2015 by Defendants, Sergeant Derrick A. Dutton and Deputy Craig S. Gripentrog and GRANT the Plaintiff's Motion for Leave to Conduct Expedited Discovery [Dkt. #29], filed on September 21, 2015.

## II.      Standard of Review

In a case like this one, where Plaintiff contends material fact issues bear on Defendants' entitlement to qualified immunity, the standard of review applicable to Plaintiff's discovery request is closely entwined with the standard for evaluating the pending motion to dismiss on immunity grounds.  The Fifth Circuit's precedent requires the Court to make at least a preliminary evaluation of the Motion to Dismiss on its merits before determining what, if any,

discovery into the identity of the Doe defendants is necessary. *Webb,* 2015 U.S. App. LEXIS 12445 at *9-11 (collecting cases). Therefore, the Court turns first to the standard for a motion to dismiss on grounds of qualified immunity.

### A.  Motion to Dismiss

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, 550 U.S. at 570.

Further, although qualified immunity is an affirmative defense, "plaintiff has the burden to negate the assertion of . . . immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). When the defense of qualified immunity is raised in a motion to dismiss, the complaint is subject to a heightened pleading requirement, which requires "claims of specific conduct and actions giving rise to a constitutional violation." *Cunningham v. City of Balch Springs*, No. 3:14-CV-59-L, 2015 U.S. Dist. LEXIS 80145 (N.D. Tex. June 19, 2015) (citing *Schultea v. Wood*, 47 F.3d 1427, 1432, 1434 (5th Cir. 1995) (en banc)).

1.  *Excessive Force*

To state a violation of the Fourth Amendment's prohibition on the use of excessive force, Plaintiff "must allege (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008). The standard for determining whether the use of force is objectively unreasonable is well established:  it is a fact sensitive inquiry that turns on the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396 (1989). Additional considerations that "may bear on the reasonableness or unreasonableness of the force used [include]: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, No. 14-6368, 2015 U.S. LEXIS 4073, *12-13 (U.S. June 22, 2015).

2.  *Deliberate Indifference to Medical Needs*

The Fifth Circuit has found "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996). To state a claim for injuries suffered during a search and seizure, the plaintiff must allege facts that establish "'the official had subjective knowledge of a substantial risk of serious harm . . . but responded with deliberate

indifference to that risk.'"  *Collier v. Montgomery*, 569 F.3d 214, 219-220 (5th Cir. La. 2009) (quoting *Hare*, 74 F. 3d at 650).

### 3.    *Bystander Liability for Constitutional Violations*

In addition to excessive force and deliberate indifference to his medical needs, Crisp asserts bystander claims against each of the individual officers and deputies involved in the seizure of his person and search of his home.  2d. Am. Compl. [Dkt. #19] at 6-7.  Though each state actor's conduct must be evaluated individually for purposes of Section 1983, a claim for "bystander liability" may be stated against an officer who did not personally act against the Plaintiff.  *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).  Bystander liability requires that the state actor "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  *Id.*; *see also Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under [S]ection 1983") (citing *Harris v. Chanclor*, 537 F.2d 203, 205-06 (5th Cir. 1976)).

### B.    **Discovery Relevant to Immunity Defense**

The Fifth Circuit "has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense."  *Backe*, 691 F.3d at 648.  First, the court must find the plaintiff has plead "'facts which, if true, would overcome the defense of qualified immunity.'"  *Id.* (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994-95 (5th Cir. 1995)).  Then, "if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the

immunity claim.'" *Backe*, 691 F.3d at 648 (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987)).[1]

This scenario must be distinguished from related, but impermissible, methods of analysis. Under no circumstances may the Court simply decline to answer the threshold question of whether Plaintiff has plead facts that are, taken as true, sufficient to overcome qualified immunity. *Backe*, 691 F.3d at 648-49. Instead, before any discovery can proceed, the Court must (1) find Plaintiff has met the threshold burden of pleading facts sufficient to overcome the defense of qualified immunity, ***and*** (2) find that actual resolution of the qualified immunity defense turns on a material fact dispute. *Id.* Even if the Court determines there is a material fact issue that is determinative of qualified immunity, the Court may not authorize "general discovery" in order to resolve the immunity question. *Id.* Prior to resolution of a qualified immunity defense, the Court may authorize only limited discovery, tailored to resolve the fact questions relevant to the issue of qualified immunity. *Id.*

---

[1] Plaintiff contends he is not seeking discovery from the public servant defendants asserting qualified immunity in this case, but from a non-party with knowledge of events. Reply in Support of Mot. Exp. Disc. [Dkt. #36] at 2. Therefore, Plaintiff argues the strict standard outlined above, requiring him to "plead facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity," *Backe*, 691 F.3d at 648, should not apply. Reply in Support of Mot. Exp. Disc. [Dkt. #36] at 2. Instead, Plaintiff directs the Court to the "good cause" standard for allowing early discovery (prior to a Rule 26(f) conference) in any civil case. Mot. Exp. Disc. [Dkt. #29] at 4. Typically, discovery cannot begin in federal court until the parties have conducted a Rule 26(f) conference, unless the court grants leave for good cause. FED. R. CIV. P. 26(d)(1). Plaintiff contends good cause for discovery exists because Plaintiff needs the requested discovery [1] "in order to identify the defendants who violated his constitutional rights." *Id.* The Magistrate Court is not persuaded that Rule 24's lenient "good cause" standard should apply where, as here, the claims against the individual Defendants are necessarily factually entwined with the information possessed by former defendant, Williamson County. There is no need to address this novel argument, however, as Plaintiff has more than met the pleading requirements necessary to support limited discovery under *Webb*, *Backe*, and *Iron Boulos.*

### III.     Analysis

### A.     Discovery Is Available to Identify Doe Defendants in Civil Rights Cases

In the vast majority of cases invoking Section 1983, discovery issued to a public servant is not available until motions to dismiss based on qualified immunity have been resolved.  *Backe*, 691 F.3d at 648.  This case is somewhat unusual, however, in that the majority of the Defendants in the current Second Amended Complaint are John Does.  The Fifth Circuit has found "the use of the 'John Doe'[pleading device] . . .  serves the legitimate function of giving a plaintiff the opportunity to identify, ***through discovery***, unknown defendants."  *Green v. Doe*, 260 F. App'x. 717, 719-20 (5th Cir. 2007) (emphasis added).  Where a plaintiff has timely plead viable factual allegations against John Doe defendants, it is an abuse of discretion for the court to refuse discovery of their identities during the limitations period.  *Id*.

As discussed above, however, the Fifth Circuit has also found it is an abuse of discretion to withhold a decision on a qualified immunity motion to dismiss pending general discovery. *Backe*, 691 F. 3d at 649.  Instead, the court must determine whether Plaintiff has made factual allegations that, if taken as true, suffice to state a claim for relief *and* to overcome any asserted qualified immunity before considering whether limited discovery is necessary to rule on any pending motions to dismiss.  *Id.*  This order of operations is exceptionally difficult to follow in the instant case, because Plaintiff alleges he was assaulted, injured, and then abandoned by multiple officers, whom he is unable, through no fault of his own, to identify without further discovery.  As Defendants are quick to point out, one of the prerequisites for liability in a Section 1983 claim is that Plaintiff's injuries are directly attributable to an individual Defendant; there is no group or derivative liability in the Section 1983 context.  Mot. Dism. [Dkt. #28] at 6 (citing *Brittany B. v. Martinez*, 494 F. Supp. 2d 534, 544 (W.D. Tex. 2007)).  Defendants seize on this

truism to argue that Plaintiff cannot survive a motion to dismiss because he cannot, without discovery, link his injuries to the actions of any specific individual Defendant—and he is not entitled to discovery unless he can allege facts sufficient to state a viable claim for relief.  Mot. Dism. [Dkt. #28] at 3-4.

This "heads I win, tails you lose" position is not the law.  Indeed, at the hearing, counsel for Defendant did *not* attempt to argue that an American citizen injured in the course of a search and seizure must identify the individual officers who injured him solely from information in his possession at the time suit is filed.  The significant body of case law authorizing Section 1983 and/or Bivens claims against "John Doe" defendants makes such an argument impossible to sustain.  *See generally, e.g., Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (allowing plaintiff to assert Fourth Amendment violations against unknown individual federal agents); *Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992) (reversing dismissal of claims against John Doe corrections officers because "[i]t is conceivable that, if he were allowed to conduct discovery, Murphy would be able to adequately identify at least one of the officers allegedly involved in each of the beatings"); *Williams v. Certain Individual Employees of the Texas Dept. of Criminal Justice*, 480 F. App'x 251, 257-58 (5th Cir. 2010) (finding "because the plaintiff has sufficiently shown that Defendant #2 violated his constitutional rights and would not be entitled to qualified immunity, the district court abused its discretion by granting summary judgment without adequate discovery, even if only to learn the defendant's identity"; *Green v. Doe*, 260 F. App'x 717, 720 (5th Cir. 2007) ("To deny Green the opportunity to amend his complaint where he has diligently sought to discover the identity of "John Doe" would be tantamount to eliminating the use of a "John Doe" in bringing any suit."). Yet Defendants do maintain that Plaintiff must be able to attribute each claimed injury to the

actions of an individual defendant in order to survive a motion to dismiss—and in order to obtain the discovery necessary to identify individual "Doe" defendants.  Mot. Dism. [Dkt. #28] at 3-4.

To clarify these facially contradictory positions, the Magistrate Court asked Defendants' counsel what, if any, effective avenue Plaintiff could have pursued to obtain the names and involvement of the individual Doe defendants prior to responding to the motion to dismiss.  The Magistrate Court finds it telling that the only suggestions counsel for Defendants could make were a pre-suit Open Records Request—which Plaintiff actually made—or a physical description of the officers involved in the raid—which Plaintiff has actually provided to Defendants' counsel in the form of a cell-phone video of the incident.  Mot. Leave [Dkt. #29] Ex. B, B-1, B-2.  On the record before the Magistrate Court, it is apparent that Plaintiff has taken all reasonable steps to obtain the identities of the proper individual defendants.

Specifically, prior to filing suit, Plaintiff served an Open Records Request on Williamson County seeking incident reports and other information containing the names and roles of the officers involved in the search and seizure.  Mot. Leave [Dkt. #29], Ex. B-1.  Williamson County responded by withholding even "basic information" such as the names of the officers, asserting some of the officers are undercover and would be jeopardized by having their names disclosed. *Id.*  (At the hearing, counsel for the individual Defendants additionally noted that Williamson County would likely invoke the litigation exception to open records disclosure to shield this information from discovery after Plaintiff filed suit.)

Plaintiff also made informal efforts to secure this basic information from Williamson County (the individual defendants' employer).  *Id.* at Ex. B-2.   Plaintiff has gone so far as to provide the attorney for the County (notably, the same attorney representing the individual named officer defendants) with bystander cell phone video of the incident in a good faith effort

to exchange basic information up front.  *Id.* [2]  The County has nevertheless refused to release incident reports, or even summary information such as officer names, relating to this incident. *Id.* at Ex. B.

In the face of the County's refusal to provide any information about the names and roles of the participating officers outside the context of litigation discovery, Plaintiff has moved this Court to allow a subpoena for limited written discovery into these issues.  Defendants assert the subpoena violates the general rule that discovery is not available until motions for dismissal based on qualified immunity have been resolved, notwithstanding the fact that the subpoena is directed at the County, a non-party entity that would not be entitled to assert the defense of qualified immunity even if it were a defendant.

At the hearing, Plaintiffs provided the Magistrate Court with persuasive authority holding that discovery to such a third party does not violate the general protection from suit provided by a defendant's qualified immunity.  *See, e.g., Williams v. City of Dallas,* 178 F.R.D. 103, 111 (N.D. Tex. 1998) (finding the need to obtain evidence from a third party is heightened where defendants assert qualified immunity and a stay of discovery is in place allowing only limited discovery from them); *Collins v. Bauer*, No. 3:11-CV-887-B, 2012 U.S. Dist. LEXIS 10180, *7-8 (N.D. Tex. Jan. 27, 2012) (collecting cases authorizing discovery from municipality that touches on an individual defendant "shielded from discovery by qualified immunity").   The Magistrate Court finds this reasoning sound.  Additionally and in the alternative, the Magistrate

---

[2] As noted above, counsel for the individual Defendants suggested at the hearing that Plaintiff might be able to identify individual officers in a manner sufficient to support his claims if he could simply describe their physical characteristics.  It is inconceivable that the eighty-one year old plaintiff, who was stunned and injured ***by the unnamed defendant officers*** at the time of these events, could give a better physical description of the officers involved than the contemporaneous cell-phone video recording already provided to Defendants' counsel (albeit in his role as counsel for Williamson County).  Yet Defendants still maintain Plaintiff has failed to identify any officer's involvement in the incident with sufficient specificity to survive a motion to dismiss, and therefore no one has any duty to disclose the names or involvement of the John Doe defendants.

Court finds discovery is warranted under the *Backe* framework discussed above: where the Plaintiff has plead facts that, if true, are sufficient to overcome the defense of qualified immunity, but the facts on which Defendants' entitlement to qualified immunity depends are in dispute, it is appropriate for the Court to authorize limited discovery into facts relevant to qualified immunity. *Backe*, 691 F.3d at 648-49.

### B.      Plaintiff Has Met His Threshold Pleading Burden

Sergeant Dutton and Deputy Gripentrog, the individual Defendants named by Plaintiff, move to dismiss on the grounds that (1) Plaintiff's factual allegations fail to state any actual violation of a clearly established right; and (2) Plaintiff's factual allegations have not connected any of Plaintiff's injuries to actions directly attributable to either Dutton or Gripentrog. With regard to the first argument, the Court has no trouble finding that Plaintiff's factual allegations establish potential Fourth Amendment, Eighth Amendment, and bystander liability under Section 1983. *See, e.g.*, *Teames v. Henry*, No. 3:03-CV-1236-H, 2004 U.S. Dist. LEXIS 2819, *10-11 (N.D. Tex. Feb. 26, 2004) (an elderly bystander whose leg was broken when a police officer pushed her to the ground in the course of trying to arrest her husband stated an excessive force claim sufficient to overcome a qualified immunity defense, given her age, the severity of her injury, and the fact that she presented no active threat to the officers); *Thomas v. City of Galveston*, 800 F.Supp. 2d 826, 840 (S.D. Tex. 2011) (in circumstances where "the substantial risk of harm from denying medical attention . . . would be obvious to any reasonable person, . . . it can be inferred that the officers knew of that substantial risk."); *Kitchen v. Dallas County, Texas*, 759 F.3d 468, (5th Cir. 2014) ("[B]ystander liability may attach regardless of whether the directly responsible officer can be specifically identified.")

The Magistrate Court is similarly unpersuaded by Defendants' second argument that Plaintiff has failed to state a claim because he cannot identify which actions taken by the group of officers involved in the incident are directly attributable to Dutton or Gripentrog.  The officers stand on this position even though the Complaint alleges, in detail, how officer action prevented Plaintiff from identifying the individual officers involved in the raid without further discovery. Specifically, Plaintiff alleges he was disoriented and incapacitated by the intentional, unannounced detonation of a flash-bang device in close proximity to him, immediately followed by a take-down that broke his hip, rotating his leg 180 degrees and leaving him unable to stand or walk without assistance.  Yet Defendants argue—apparently without a trace of irony—that Plaintiff has failed to state any claim for which relief can be granted under Section 1983 **because** he is unable to name the specific officers who detonated a flash bang in his yard, broke his hip, and left him without medical care.

Though Plaintiff must plead with particularity the facts alleged to overcome a defense of qualified immunity, the Fifth Circuit has never required a Section 1983 plaintiff to plead facts "peculiarly within the knowledge of defendants" in order to survive a motion to dismiss. *Morgan v. Hubert*, 335 F. App'x 466, 472 (5th Cir. 2009) (citing *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995)).  Where, as here, information as to which officers allegedly injured plaintiff is not available to the plaintiff but "may be readily obtainable" from limited discovery, it is an abuse of discretion to dismiss plaintiff's claims without providing access to that discovery. *Murphy*, 950 F.2d at 292; *see also Green,* 260 F. App'x. at 719-20.

In their briefing, Defendants rely on *Meadours v. Ermel* for the proposition that each individual officer's entitlement to qualified immunity must be analyzed separately.  Mot. Dism. [Dkt. #28] at 5-6 (citing 483 F.3d 417, 421-22 (5th Cir. 2007)).  *Meadours* does require "separate

consideration of each officers' actions," 483 F.3d at 421. *Meadours* does not, however, create any requirement that a plaintiff who alleges excessive force claims against police officers working in a group must be able to identify, from his own personal knowledge and without the benefit of any discovery, which individual officer committed each act of excessive force in order to survive a 12(b)(6) motion.

Notably, *Meadours* did not deal with unidentified officer Defendants. *Id.* More recently, in *Kitchen v. Dallas County*, the Fifth Circuit addressed how qualified immunity applies to unidentified individual defendants. 759 F.3d 468, 474 (5th Cir. 2014). At the summary judgment stage, the Court found "the record does indeed present genuine issues of material fact from which a jury could conclude that excessive force was used against the deceased." *Id.* Proceeding from that initial, baseline finding that excessive force had been sufficiently alleged, the Court instructed that the next step would be to "consider . . . whether any or all of the individual Defendants-Appellees may proceed to trial on a theory of direct liability for use of force or, in the alternative, on a theory of bystander liability." *Id.* The Court expressly noted that, in making this determination, "[t]he need for 'additional discovery' remains 'an issue that the district court can consider on remand' in its discretion." *Id* at 478 (internal citations omitted).

Similarly, in *Williams v. Certain Individual Employees of the Texas Department of Criminal Justice*, the Fifth Circuit determined that an unidentified officer who allegedly refused the plaintiff medical care would not be entitled to qualified immunity on the facts alleged, and therefore it would be an abuse of discretion to dismiss plaintiff's claims against him without allowing at least some discovery as to this unknown defendant's identity. 480 F. App'x at 258.

*Williams* and *Kitchen*, although they are both summary judgment cases rather than 12(b)(6) motions to dismiss, are instructive in that they identify the threshold inquiry necessary

to overcome a defense of qualified immunity as an inquiry into what the unidentified defendants are alleged to have done. *Kitchen*, 759 F.3d at 479; *Williams,* 480 F. App'x at 258.   If, ***after discovery***, the "summary judgment evidence show[s] that certain individual Defendants-Appellees committed such actions, then those individual Defendants-Appellees cannot invoke qualified immunity during these summary judgment proceedings." *Id*. at 480.   Thus, the threshold pleading required of a plaintiff suing multiple officers for the same event is not identification of which Defendant did what, but identification of actions that should reasonably have been understood as a violation of Plaintiff's rights under federal law. *Id.*  Discovery is available to determine the names and roles of individual participants in these alleged group actions. *Id.*  This reading is consistent with the Fifth Circuit's general approval of the "Doe" pleading and discovery process. *Murphy*, 950 F.2d at 292; *see also Green,* 260 F. App'x. at 719-20.  Several District Courts within the Fifth Circuit have followed this reasoning, declining to dismiss Section 1983 claims against individual officers acting in concert simply because the plaintiff has no means of identifying which officer did what at the motion to dismiss stage. *See, e.g.*, *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 860-61 (S.D. Tex. 2014) ("[L]ack of such factual specificity at this stage of the case does not provide a basis on which to grant or deny defendants' motion to dismiss for failure to state a claim."); *Callaway v. City of Austin*, No. 15-cv-103-SS, 2015 U.S. Dist. LEXIS 91364, *25 (W.D. Tex. July 14, 2015) ("The argument that a plaintiff has failed to state a claim for excessive force simply because the witness could not see which officer did what fails at the ***summary judgment*** stage."); *Huff v. Refugio County*, No. 6:13-cv-32, 2013 U.S. Dist. LEXIS 146204, *6 ("Defendants take the principle requiring a plaintiff to identify individual conduct attributable to each public official too far" in moving to dismiss because Plaintiff could not tell which officer hit him and which officer restrained him).

17

At the hearing, Defendants relied heavily on *Ashcroft v. Iqbal* to support the position that Plaintiff must identify specific acts attributable to the individual defendants in order to survive a motion to dismiss. 556 U.S. 662, 685-686 (2009).   This landmark Supreme Court decision indeed requires that a Plaintiff allege some action plausibly attributable to a defendant in order to survive a motion to dismiss (and subject that defendant to discovery). *Id.*  To the extent *Iqbal* is a case about qualified immunity, however, its holding is expressly and repeatedly limited to addressing the qualified immunity of two named officials against whom the plaintiff has failed to plead any actions violating his rights under federal law.  *Id.* at 686.  In contrast, Plaintiff Crisp has plead the named Defendants, in conjunction with multiple unidentified "John Doe" individual defendant officers, were personally involved in the execution of the search warrant that resulted in Crisp's personal injury and property damage.  Notably, the *Iqbal* Court expressly declined to dismiss similar excessive force claims against unknown "John Doe" officers, and in fact goes so far as to acknowledge "Respondent's account of his prison ordeal alleges serious official misconduct" against those unidentified Doe officers.  *Id.* at 684.  Likewise, Plaintiff's allegations in this case describe serious official misconduct, allegedly personally committed or participated in by the individual named and *Doe* defendants.  Plaintiff has sufficiently alleged that the officers who participated in executing a search warrant at his home committed acts that violated his clearly established rights under federal law.  *Kitchen*, 759 F.3d at 479; *Williams,* 480 F. App'x at 258.  Plaintiff has alleged Defendants Dutton and Gripentrog are officers who participated in executing this search warrant.  Therefore, Plaintiff has stated claims against Dutton and Gripentrog that, if true, are sufficient to overcome their entitlement to qualified immunity.  *Id.*

**D.      Material Fact Issues Remain With Regard to Qualified Immunity**

Of course, in light of the fact that Plaintiff is unable to identify which Defendants among the group of officers injured him in the course of executing the search warrant, material fact issues remain with regard to Dutton and Gripentrog's claims of qualified immunity.  In order to establish whether or not each individual Defendant can assert qualified immunity, it is crucial to know which officer performed which complained-of action, what each officer saw his fellow officers do, and what each officer saw and heard Crisp do.  Particularly in light of Gripentrog's assertion he was not working the day the search warrant was executed, it will be necessary to resolve through discovery the role of each individual defendant in the execution of the search warrant.

Gripentrog's time sheets, attached in support of Defendants' Motion to Dismiss, purportedly show he was not on duty at the time the search warrant was executed.  Mot. Dism. [Dkt. # 28] at Ex. A.  Though the Magistrate Court finds this unauthenticated, non-public record is not appropriate for consideration at the motion to dismiss stage, the time card (if properly authenticated) is exactly the type of discovery record that is relevant to the issue of qualified immunity.  *See Murphy*, 920 F.2d. at 292.  Where such fact discovery is relevant and necessary to determine qualified immunity, the correct procedure is to defer ruling on qualified immunity and carry the motion to dismiss, converting it to a motion for summary judgment after appropriate discovery has been conducted.  *Webb*, 2015 U.S. App. LEXIS 12455, * 7-8 (citing *Backe*, 691 F.3d at 647).

Plaintiffs have propounded four written discovery requests, limited in scope, to third party Williamson County.  Mot. Leave [Dkt. #29] Ex. A.  These discovery requests seek only information identifying the names and roles of the individual officers involved in executing the

search warrant at issue here.  *Id.*  The Court finds these discovery requests are narrowly tailored to obtain information necessary and relevant to the determination of whether Gripentrog and Dutton are entitled to dismissal on grounds of qualified immunity.  *Lion Boulos*, 834 F.2d at 507-08.  Therefore, in accordance with the procedure articulated by the Fifth Circuit, the Magistrate Court RECOMMENDS the District Court CARRY the Motion to Dismiss [Dkt. #28], GRANT the Motion for Leave to Conduct Expedited Discovery [dkt. #29], and re-examine the Motion to Dismiss (likely as a converted motion for summary judgment) after the relevant discovery has been conducted and the parties have had the opportunity to amend and supplement their pleadings and briefing accordingly.  *Webb*, 2015 U.S. App. LEXIS 12455, * 7-8 (citing *Backe*, 691 F.3d at 647).

## IV.    Conclusion

For the reasons set out above,

The Magistrate Court RECOMMENDS that the District Court CARRY Defendants' Motion to Dismiss for Failure to State a Claim [Dkt. #28].

The Magistrate Court RECOMMENDS that Plaintiff's Motion for Leave to Conduct Expedited Discovery [Dkt. #29] be GRANTED, and Plaintiff be granted leave to serve on non-party, Williamson County, the Rule 45 Subpoena attached as Exhibit A to the Motion [Dkt. #29].

## V.    Objections

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED November 12, 2015

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE